NO. 15-2499

# United States Court of Appeals
*for the*
# Fourth Circuit

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333;
RIKER J. McKENZIE, JR.; EZEKIEL GIVENS; AVON ALLISON; DERRICK
ARTER; JAMES ANDERSON; RASUL A. AQUIL; ANDRE BENNETT;
STANLEY BERRY; ALBERT JASON BOYD; GARY D. BREWINGTON;
PAUL J. BRISCOE; KENNARD BROWN; QUANTA BROWN; MOAB
BROWN-BEY; GARY KENNETH BURRELL; SHERMAN CANNON;
JEROME CARTER; STACEY M. CHASE; CHRISTOPHER COLBERT;
CARYN J. CONYERS; ANTIONE CRAWFORD; CULMER BARRY, JR.;
RICHARD DANIEL; PRENTICE DENNIS; CHRISTOPHER DUNNOCK;
ERIC DUVALL, SR.; ERIC DUVALL, JR.; JOHN D. EATON; KEITH
FERGUSON; DAMON FLEARY, SR.; ERIKA GAINES; TODD A.
GALLOWAY; NATHAN GILMER; SCOTT L. GIVENS; AMANDA GRAVES;
JOSEPH B. GREEN, JR.; TEION HAIRSTON; TAAVON HALL; KEASHA
HANNAH; JOSEPH A. HARDEN, IV; DIANE HIBLER; DOMENIQUE
HOLDEN; SHAWN JACKSON; CARL LEE JOHNSON, JR.; CHARLES
JOHNSON; MARIO JOHNSON, JR.; MAURICE JOHNSON; CALVIN E.
JONES; GEORGE JONES; WAYNE JONES; PARKER RAY KEY; STEVEN
KNIGHT; MARCEL LARKINS; CHARMAINE V. LITTLE; DERICK LITTLE;
EUGENE N. LITTLE; TERRY LONG; RODNEY K. MARTIN; JAMES
LAMONT McNAIR; STEVEN B. MILLER, SR.; WALTER C. MOORE;
ANWAR MUHAMMAD; DANA MUNDELL; GREGORY JEROME
MURRAY; KEVIN MYRICK; CHARLES NELSON, JR.; NATHANIEL L.
PRYOR, JR.; TYRONE E. QUEEN, SR.; EMANUEL Q. REED; ALISHA
RHODES; MARCUS RICHARDSON; MAURICE SHERROD; VON A.
SIMON; EVERETT J. SMITH; RANDOLPH SMITH; ANDREW SMITHSON,
SR.; BOBBY SYDNOR; KELLY TOREZ TALBERT; ALLEN R. TAYLOR;
DELVIN THOMPSON; KEVIN TUCKER; HAYWARD WALLACE; PHILLIP
WEST; FREDERICK WHITE; DANTE WILLIAMS; HARRISON WILLIAMS;
REGINALD JEROME WILSON; RANDY WRIGHT; JOSEPH EVANS;
DARYL ESTEP; ERIC RIDGEWAY; JAMAL EVANS; LAMONT COGER;
ALPHONSO WATSON; MAURQUISE MOODY; MAURICE MOODY;
JARMALL MCKEEVER; AARON BARNETT; SEMAJ WASHINGTON;
RONALD McBRIDE,

*Plaintiffs-Appellants,*

– v. –

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO;
HAROLD J. DAGGETT; BENNY HOLLAND, JR.; STEPHEN KNOTT;
GERALD OWENS; JOHN D. BAKER; STEAMSHIP TRADE ASSOCIATION
OF BALTIMORE, INCORPORATED,

*Defendants-Appellees.*

––––––––––––––––––––––––––

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND AT BALTIMORE IN CASE NO. 15-CV-00813-CCB
HONORABLE CATHERINE C. BLAKE

# BRIEF FOR DEFENDANTS-APPELLEES INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, HAROLD J. DAGGETT, BENNY HOLLAND, JR., STEPHEN KNOTT, GERALD OWENS AND JOHN D. BAKER

KEVIN J. MARRINAN
JOHN P. SHERIDAN
MARRINAN & MAZZOLA MARDON, P.C.
*Attorneys for Defendants-Appellees*
  *International Longshoremen's*
  *Association, AFL-CIO, Harold J.*
  *Daggett, Benny Holland, Jr.,*
  *Stephen Knott, Gerald Owens*
  *and John D. Baker*
26 Broadway, 17th Floor
New York, New York 10004
(212) 425-3240
kmarrinan@mmmpc.com
jsheridan@mmmpc.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. Rule of App. P. 26 and Local Rule 26.1 Defendants-Appellees International Longshoremen's Association, AFL-CIO; Harold J. Daggett; Benny Holland, Jr.; Stephen Knott; Gerald Owens; and John Baker disclose that none of them is a publicly held corporation that has a direct financial interest in the outcome of this litigation; and none of the mentioned Defendants-Appellees is a trade association.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ............................................................................. 1

STATEMENT OF THE ISSUES ......................................................................... 2

STATEMENT OF THE CASE ............................................................................. 3

STATEMENT OF FACTS .................................................................................... 6

    Parties ............................................................................................................ 6
    Dispute Over Selling Sham Union Memberships ........................................ 8
    Charges Brought Against Executive Board ................................................. 9
    Temporary Trusteeship ............................................................................... 9
    Hearing on Charges and Permanent Trusteeship ...................................... 10

SUMMARY OF THE ARGUMENT ................................................................. 11

ARGUMENT ...................................................................................................... 15

    STANDARD OF REVIEW .................................................................................. 15

        Rule 12(b)(1) ......................................................................................... 15
        Rule 12(b)(6) ......................................................................................... 16

    I.    THE DISTRICT COURT CORRECTLY
        HELD THAT THE NONMEMBER PLAINTIFFS
        COULD NOT STATE A CLAIM UNDER THE LMRDA .................. 16

        District Court's Analysis ....................................................................... 17
        Plaintiffs' Position ................................................................................. 19

Additional Arguments Raised By Plaintiffs ............................................25

II.    THE DISTRICT COURT CORRECTLY HELD THAT
       THE AMENDED COMPLAINT FAILED TO
       ALLEGE FACTS THAT THE TRUSTEESHIP
       WAS IMPOSED FOR AN IMPROPER PURPOSE ............................28

       Statutory Scheme .............................................................................28
       The District Court's Decision.........................................................30
       Plaintiffs' Arguments .....................................................................31
       The Purpose of the Trusteeship .....................................................34

III.   THE DISTRICT COURT CORRECTLY
       HELD THAT THE NONMEMBER PLAINTIFFS
       LACK STANDING UNDER LMRA § 301 .........................................38

IV.    PLAINTIFFS HAVE NO STANDING TO SUE TO
       MODIFY THE HARVEY CONSENT DECREE.................................44

CONCLUSION .......................................................................................46

# TABLE OF AUTHORITIES

## Cases

*Abrams v. Carrier Corp.*, 434 F.2d 1234 (2d Cir. 1970)..........................................28

*Alipui v. Byerson*, 2016 U.S. App. LEXIS 914
 (4th Cir. Jan. 20, 2016) .........................................................15

*Andon, LLC v. City of Newport News*, No. 12-2358,
 2016 U.S. App. LEXIS 2237 (4th Cir. Feb. 9, 2016)..........................................15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................16

*Austin v. Int'l Bhd. of Elec. Workers*, 2012 WL 685416
 (E.D. Ms. 2012) .........................................................40

*Axelrod v. Stoltz*, 264 F. Supp. 536 (E.D. Pa. 1967),
 *aff'd*, 1391 F.2d 549 (3d Cir. 1968).......................................27

*Basilicato v. Int'l Alliance of Theatrical Stage Emps.*,
 479 F. Supp. 1232 (D. Conn. 1979) ......................................27

*Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926
 (11th Cir. 1995) .........................................................36

*Becker v. Indus. Union of Marine & Shipbuilding Workers*,
 900 F.2d 761 (4th Cir. 1990) ...................................... 29, 30

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).......................... 16, 31

*Blitz v. Napolitano,* 700 F.3d 733 (4th Cir. 2012) ...................................15

*Brady v. Int'l Bhd. of Teamsters, Local 817,*
 741 F.3d 387 (2d Cir. 2014) ...................................... 21, 22

*C.A.P.E. Local Union 1983, IBPAT v. Int'l Bhd. of Painters
 & Allied Trades*, 598 F. Supp. 1056 (D.N.J. 1984).............................34

iv

*Cnty. of Suffolk v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984) ................................................................40

*Davis v. FEC*, 554 U.S. 724 (2008) ........................................................39

*Dolgaleva v. Va. Beach City Pub. Sch.*,
  364 F. App'x 820, 825 (4th Cir. 2010) ..............................................32

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) .............................................................32

*Echenique v. Convergys*, 473 Fed. Appx. 323 (4th Cir. 2012)................33

*Exec. Bd. Local 1302 v. United Bhd. of Carpenters
  & Joiners of Am.*, 477 F.2d 612 (2d Cir. 1973)....................................37

*Feist v. Eng'rs Beneficial Ass'n*,
  118 L.R.RM. (BNA) 2421 (E.D.L.A. 1983) ........................................18

*Goldfarb v. Mayor & City Council of Baltimore*,
  791 F.3d 500 (4th Cir. 2015) .............................................................15

*Hill v. SCA Credit Servs.*, 622 Fed. Appx. 231 (4th Cir. 2015) .............31

*Holloway v. Pagan River Dockside Seafood, Inc.*,
  669 F.3d 448 (4th Cir. 2012) .............................................................17

*Hughes v. Local 11, Int'l Ass'n of Bridge, Structural,
  & Ornamental Ironworkers*, 287 F.2d 810 (3d Cir.),
  *cert. denied*, 368 U.S. 829 (1961) ......................................................27

*Ibarra v. United States,* 120 F.3d 472 (4th Cir. 1997)............................16

*In re Carta*, 618 F.2d 1093 (5th Cir. 1980) ...........................................19

*Int'l Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n,*
  Civ. No. CCB-15-813, 2015 WL 1402342 (D. Md. Mar. 25, 2015) ...................5

*Int'l Org. of Masters v. Prevas,* 175 F.3d 341 (4th Cir. 1999)................23

*Int'l Union, United Mine Workers v. Covenant Coal Corp.,*
  977 F.2d 895 (4th Cir. 1992) .................................................................41

*Jolly v. Gorman*, 428 F.2d 960 (5th Cir. 1970),
  *cert . denied*, 400 U.S. 1023 (1971) .....................................................29

*Karo v. San Diego Symphony Orchestra Ass'n*,
  762 F. 2d 819 (9th Cir. 1993) ...............................................................40

*Lexington Cartage Co. v. Int'l Bhd. of Teamsters*,
  1982 U.S. Dist. LEXIS 12398 (E.D. Ky. 1982)..................................39

*Local 334, United Ass'n of Journeymen v.*
  *United Ass'n of Journeymen,* 669 F.2d 129 (3d Cir. 1982) ................20

*Marks v. Dann*, 600 Fed. Appx. 81 (4th Cir. 2015)..................................31

*Martinez v. Holder*, 524 Fed. Appx. 934 (4th Cir. 2013)...................5, 30

*Mason Tenders Dist. Council v. Laborers' Int'l Union*,
  884 F. Supp. 823 (S.D.N.Y. 1995) ................................................ 33, 34

*Massey v. Int'l Bhd. of Teamsters, Local 738*, No. 03-C-2410,
  2003 U.S. Dist. LEXIS 7474 (N.D. Ill. May 5, 2003) ........................36

*McCleary-Evans v. Md. DOT*, 780 F.3d 582 (4th Cir. 2015).................31

*Moore v. Local 569*, 653 F. Supp. 767 (S.D. Cal. 1987).......................40

*Morris v. Hoffa*, Civil Action No. 99-5749,
  2001 U.S. Dist. LEXIS 16692 (E.D. Penn. 2001)........................ 33, 34

*Moynahan v. Pari-Mutuel Emps. Guild of Cal.,*
  *Local 280,* 317 F.2d 209 (9th Cir. 1963)..................................... 18, 27

*Nat'l Ass'n of Letter Carriers v. Sombrotto*,
  44 F.2d 915 (2d Cir. 1971) .......................................................... 30, 33

*Pape v. Local 390, Int'l Bhd. of Teamsters*,
  315 F. Supp. 2d 1297 (S.D. Fla. 2004)................................................33

*Papianni v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 11*, 622 F. Supp. 1559 (D.N.J. 1985)................................20

*Piney Run Pres.Ass'n v. Cty. Comm'rs of Carroll Cty.,* 523 F.3d 453 (4th Cir. 2008) ................................................15

*Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308 (4th Cir. 2009) ................................15

*Richardson v. Perales*, 402 U.S. 389 (1971) ............................................36

*Riethman v. Berry,* 287 F.3d 274 (3d Cir. 2002) ....................................23

*Rodriguez v. Doe*, 549 Fed. Appx. 141 (4th Cir. 2013)...........................................31

*S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands LLC*, 713 F.3d 175 (4th Cir. 2013) ........................33

*Scanz v. New York Times*, 1997 U.S. Dist. LEXIS 10285 (S.D.N.Y. 1997)......................................................40

*Sepulveda v. Pac. Maritime Ass'n*, 878 F.2d 1137 (9th Cir. 1989)........................40

*Serv. Emps. Int'l Union, Local No. 87 v. Serv. Emps. Int'l Union, Local No. 1877*, 230 F. Supp. 2d 1099 (N.D. Cal. 2002)....................................37

*Stanley v. Int'l Bhd. of Elec. Workers,* 207 Fed. Appx. 185 (3d Cir. 2006) ....................................................19

*Teamsters Local Union No. 2000 v. Hoffa,* 284 F. Supp. 2d 684 (E.D. Mich. 2003) .............................................36

*Teamsters Local Union No. 406 v. Crane,* 848 F.2d 709 (6th Cir. 1988)............................................. 33, 35, 36, 37

*United Ass'n of Journeymen & Apprentices of the Plumbing
   & Pipefitting Indus. v. Local 334, United Ass'n of Journeymen
   & Apprentices of the Plumbing & Pipefitting Industry*,
   452 U.S. 615 (1981) ........................................................................41

*United Bhd. of Carpenters & Joiners v. Tile Helpers Union Local 88,*
   740 F. Supp. 167 (E.D.N.Y. 1990)....................................................41

*United Bhd. of Carpenters v. Helpers Union Local 88,*
   740 F. Supp. 167 (E.D.N.Y. 1990)....................................................40

*United States ex rel. Oberg v. Pa.Higher Educ.
   Assistance Agency,* 745 F.3d 131 (4th Cir. 2014) ...........................24

*Velasco v. Gov't of Indonesia,* 370 F.3d 392 (4th Cir. 2004)..................15

*Vincent v. Plumbers & Steamfitters, Local 198,*
   409 F. Supp. 206 (M.D. La. 1976) ...................................................27

*Wallace v. Int'l Org. of Masters, Mates & Pilots,*
   547 F. Supp. 155 (S.D.N.Y. 1982) ...................................................27

*Walters v. McMahen,* 684 F.3d 435 (4th Cir. 2012).............................16

*Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,*
   502 U.S. 93 (1991) ..........................................................................39

*Worthy v. Gen. Longshoremen's Workers Int'l Longshoremen's Ass'n,
   Local 333*, Civil Action No. 01-3683,
   2002 U.S. Dist. LEXIS 22813 (E.D. La. Nov. 26, 2002)............................ 19, 26

**Statutes**

28 U.S.C. § 1291 ..............................................................................1
28 U.S.C. § 1331 ..........................................................................1, 17
29 U.S.C. § 102 ...............................................................................28
29 U.S.C. § 152(5) ............................................................................6
29 U.S.C. § 185 ........................................................................ *passim*
29 U.S.C. § 402(o) ..................................................................... 18, 27
29 U.S.C. § 462 ...................................................... 4, 16, 29, 36
29 U.S.C. § 464 ....................................................................... *passim*
29 U.S.C. § 464(a) ...........................................................................18
29 U.S.C. § 464(c) ...........................................................................29

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................... 5, 6, 14
Fed. R. Civ. P. 12(b)(6)................................................... *passim*
Fed. Rule of App. P. 26.......................................................... i

**Micsellaneous**

Restatement (Second) of Contracts § 203(b) (1981) ...............................................27

S. Rep. No. 187, 86th Cong., 1st Sess. at 18 (1959),
    *reprinted in* 1959 U.S.C.C.A.N. 2318........................................................ 33, 44

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the action involves questions of federal law.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Plaintiffs filed their Notice of Appeal from the district court's October 30, 2015 order which granted the Defendants' motion to dismiss and motion to strike. (JA 438; DE 56.)[1]

---

[1] In accordance with the Fourth Circuit's Local Rules, "JA ___" refers to citations to the Joint Appendix and "DE ___" refers to citations to the district court's docket entries.

## STATEMENT OF THE ISSUES

1.      Did the district court correctly hold that an individual who is not a union member cannot state a claim under LMRDA § 304?

2.      Did the district court correctly hold that the amended complaint failed to allege facts that the trusteeship was imposed for an improper purpose?

3.      Did the district court correctly hold that an individual who is not a union member lacks standing to sue an International union under LMRA § 301?

4.      Did the district court correctly hold that an individual who is not party to a consent decree lacks standing to sue to modify that decree?

## STATEMENT OF THE CASE

There is no dispute that Local 333 was beset by problems.  On November 24, 2014, the International Longshoremen's Association, AFL-CIO (hereinafter "ILA"), imposed a trusteeship over ILA Local 333 and suspended the local union officers.  (JA 100; DE 28 at ¶ 73.)  The ILA held that Local 333 could not require the 500-plus prospective applicants to pay $2,195 in initiation fees and quarterly dues and make them sign an "unconditional waiver" of their right to seek reimbursement if they did not obtain employment in the industry.  (JA 199; DE 35-3 at 13.)

The ILA ruled that the waiver forms were improper because they purported to give the applicants the right to vote on the ratification of the collective bargaining agreement, even though many of the 500 had never worked a day under the collective bargaining agreement.  The ILA held that these 500-plus individuals were not members of either the ILA or Local 333, since they had not fulfilled the requirements of membership and ordered them to be reimbursed for their dues and fees, despite the language of the waiver form.  (JA 98; DE 28 at ¶ 66.)

Plaintiffs Riker McKenzie, Ezekiel Givens, Aaron Barnett, Lamont Coger, Daryl Estep, and Ronald McBride are members of the International Longshoremen's Association Local 333 ("Local 333") and former members of its

executive board (collectively "Member Plaintiffs").[2]   Together with ninety-three other individuals who were denied union membership (collectively "Nonmember Plaintiffs),[3] and, putatively, the Local itself, they brought this action against the International Longshoremen's Association, AFL-CIO, five members of the ILA Executive Council,[4] and the Steamship Trade Association of Baltimore, Inc., alleging (1) violations of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 462, 464; (2) violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and; (3) a claim of contempt arising out of a nearly fifty-year-old consent decree from the United States District Court for the District of Maryland.

This lawsuit arises out of two union disciplinary hearings involving a membership dispute and the ensuing trusteeship imposed by Defendant ILA.  (JA 98, 101; DE 28 at ¶¶ 65–66, 75–76.)   On March 20, 2015, Plaintiffs filed a complaint seeking to challenge the trusteeship imposed some four months earlier. (DE 1.)   On March 24, 2015, the day before Local 333 was set to conduct a

---

[2] Another Plaintiff, Calvin Jones, is also a member in good standing; however, he did not serve on Local 333's executive board. (JA 219; DE 35-7 at ¶ 8.)

[3] These ninety-three individuals are referred to in this brief as the "Nonmember Plaintiffs" consistent with the terminology used by the district court in its opinion.

[4] The five executive officers are Harold J. Daggett, President; Benny Holland, Executive Vice-President; Stephen Knott, General Vice-President; Gerald Owens, General Organizer; and John D. Baker, Assistant General Organizer.

4

ratification vote on the collective bargaining agreement, Plaintiffs requested a temporary restraining order and preliminary injunction barring the vote. (DE 3-1.) The district court denied that motion, *Int'l Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n,* Civ. No. CCB-15-813, 2015 WL 1402342 (D. Md. Mar. 25, 2015). (DE 47-3.) A month later, on April 20, 2015, Defendant STA moved to dismiss Count III of the complaint relating to Plaintiffs' claim for contempt. (JA 43; DE 14.) A few weeks after that, on May 11, 2015, Plaintiffs filed an amended complaint. (JA 69; DE 28.) On June 1, 2015, the ILA filed a motion to strike Local 333 as a party plaintiff (DE 37.), and a motion to dismiss the amended complaint (JA 179; DE 35.)

On October 30, 2015, the district court issued a memorandum and order granting the ILA's motion to strike, and granting the Defendants' motions to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). (JA 421; DE 55.)

The district court granted the Defendants' motion to strike Local 333 as a party-plaintiff. (JA 427; DE 55 at 7.) Plaintiffs did not appeal that order. Accordingly, Local 333 is not an actual appellant.[5]

---

[5] It is "longstanding Fourth Circuit precedent" not to consider an issue that was forfeited because it was not discussed in the Appellant's opening brief. *Martinez v. Holder*, 524 Fed. Appx. 934, 935 (4th Cir. 2013).

The district court dismissed Count I pursuant to Federal Rule of Civil Procedure 12(b)(6). (JA 431; DE 55 at 11.) As to the Nonmember Plaintiffs, the district court held they could not state a valid LMRDA claim because they could not allege that they were members of a labor organization. *Id*. As to all Plaintiffs, the district court ruled that Count I did not state a claim because it failed to allege any procedural defect in the imposition of the trusteeship and further failed to allege sufficient facts that the ILA's stated purpose of "restoring democratic procedures" was a pretext. (JA 433; DE 55 at 13.)

Further the district court dismissed Count II pursuant to Rule 12(b)(1) when it ruled that Nonmember Plaintiffs lacked standing to pursue a claim under LMRA § 301 on the grounds that they were not members of the ILA and, as a result, not third-part beneficiaries of the ILA Constitution. (JA 435; DE 55 at 15.)

Finally, the district court dismissed Count III pursuant to Rule 12(b)(1) because Plaintiffs were not parties to the Harvey Consent Decree, and consequently, Plaintiffs lacked standing to sue to modify the terms of that decree. (JA 436-37; DE 55 at 16-17.) Plaintiffs then filed this timely appeal.

## STATEMENT OF FACTS

**Parties**

Defendant ILA is an international labor organization as that term is defined in Section 2(5) of the LMRA. 29 U.S.C. § 152(5). (JA 87; DE 28 at ¶ 19.) The

ILA represents longshore workers in ports on the Atlantic and Gulf Coasts of the United States, including longshore workers employed by members of the STA in the Port of Baltimore.[6]  The individual defendants are or were ILA officers.  (JA 87-88; DE 28 at ¶¶ 20-24.)

Local 333 is a local union affiliated with the ILA and composed of longshore workers employed principally at marine terminals in Baltimore, Maryland.  Until the trusteeship, Plaintiff Riker McKenzie was the President of Local 333, and Plaintiff Ezekiel Givens was the Recording Secretary of Local 333 Plaintiffs Aaron Barnett, Lamont Coger, Daryl Estep, and Ronald McBride were members of Local 333's Executive Board.  Plaintiff Calvin Jones is a rank-and-file member of Local 333.  The ninety-three (93) remaining plaintiffs are individuals who were denied membership in the ILA (the "Nonmember Plaintiffs").  (JA 85-87; DE 28 at ¶¶ 11-18.)

---

[6] STA is a multiemployer collective-bargaining representative for its members, which are employers of waterfront labor in the Port of Baltimore.  STA negotiates, enters into, and administers on behalf of its members collective bargaining agreements prescribing the local terms and conditions for longshore workers in the Port of Baltimore.  (JA 88; DE 28 at ¶ 26.)

In 2012, Local 333 admitted approximately 150 new members as the result of a lottery process.  (JA 195-96; DE 35-3 at 9-10.)  Article V of the Local 333 bylaws sets forth the membership requirements.  It states:

> **Section 3.**  An applicant having made their application in proper form, having paid the initiation fee and **having been approved by a vote of a majority of the membership** present at a regular or special meeting of this Local Union shall be deemed a member.

(JA 218; DE 35-7 at ¶ 2 (emphasis added).)

**Dispute Over Selling Sham Union Memberships**

That same year, the membership of Local 333 voted to stop admitting any more new members pending the outcome of ongoing negotiations with the STA. (JA 195-96; DE 35-3 at 9-10.)  Notwithstanding this vote, the executive officers of Local 333 began accepting and processing new applications for membership in 2014.  (JA 196; DE 35-3 at 10.)

The officers collected initiation fees in the amount of $2,000 and quarterly dues of $195 and "admitted" approximately 500 new members in August and September of 2014 without presenting those individuals for a vote before the membership of Local 333.  (JA 196; DE 35-3 at 10.)  For the first time, Local 333 also required these new members to sign a waiver form stating they were not entitled to a refund of their fees.  The waiver form stated the fees were non-refundable even if they failed their pre-employment screening, were unable to

8

receive training required to work in the industry, or there was a lack of work. Simply put the waiver stated they were not entitled to a refund even if they were never eligible to work or never found any work in the industry.  (JA 199; DE 35-3 at 13.)

**Charges Brought Against Executive Board**

In early September, a member of Local 333 filed internal union disciplinary charges regarding these 500-plus purported admissions, and the ILA directed Local 333 to cease admitting new members.  (JA 185; DE 35-2.)  The ILA held a disciplinary hearing that same month.  Findings from the hearing were released on November 24, 2014.  (JA 187; DE 35-3.)  The report charged Local 333's executive officers with trying to admit the approximately 500 new members in violation of the Local's bylaws, citing a provision calling for all new members to be approved by a vote of the membership. (JA 187; DE 35-3.)  In conjunction with the fee waiver and the relative inexperience of the new membership pool, the report that the local's actions created the appearance that the officers were in effect "'selling' conditional memberships" to persons "not working [and unlikely to find work] under the collective bargaining agreement."  (JA 198-99; DE 35-3 at 12-13.)

**Temporary Trusteeship**

Confronted with the circumstances surrounding the membership issue, ILA Vice-President Rowell requested that Daggett appoint a temporary trustee "[d]ue to

the imminence of the vote on the local collective bargaining agreement and the Local 333 election of officers."  (JA 185; DE 35-3.)  Daggett suspended Local 333's executive board and appointed Rowell as temporary trustee beginning on December 1, 2014.  (JA 200; DE 35-4.)  During the trusteeship, the ILA refused to recognize as members the approximately 500 persons whose "admission" had prompted the trusteeship.  (JA 388; DE 46-16.)[7]

**Hearing on Charges and Permanent Trusteeship**

The ILA conducted a hearing on December 4, 2014, on the charges regarding member admissions and the need to continue the trusteeship to "restore democratic procedures."  (JA 205; DE 35-5 at 3.)  On February 14, 2015, the committee released its report from the December 4, 2014, hearing, recommending continuation of the trusteeship to concentrate, *inter alia,* on maintaining accurate membership lists and dealing with the fall-out from Local 333's attempt to admit new members.  (JA 214; DE 35-5 at 12.)  The report held:

- The former executive officers had no authority to require payment of initiation fees ($2,000) or quarterly dues ($195) in excess of that authorized by the membership. The application that this money is non-refundable even if the applicant cannot obtain work is in derogation of ILA goals and these acts are clearly detrimental to the welfare of the ILA.

---

[7] Approximately forty individuals challenged their denial of membership by filing unfair labor practices with the National Labor Relations Board.  These charges were all reportedly dismissed or withdrawn.  (JA 182; DE 35-1 at ¶ 7.)

- Some applicants have been paying quarterly dues for up to four (4) years and have never worked.

- There is a need for a trusteeship to apply an equitable resolution to those individuals who paid an initiation fee and quarterly dues with no chance of being able to work under the CBA. At present, no one is allowed to work from the Hiring Center unless he or she has a PIT card. The employers control PIT training and have only allowed 10 trainees per class.

- Trusteeship is required to determine who should vote on Contract ratification. Allowing people who do not work under the CBA to vote would make a sham of whether a majority approves or disapproves the Local Contract. It would dilute the weight of the valid union members who have worked under the CBA.

- The Trustees must make a determination of who is qualified to vote in any upcoming Local election of officers. There must be an objective determination of who is eligible to vote in said election.

(JA 207-13; DE 35-5 at 5-11.). The report found other problems including a backlog of 670 unheard or unresolved grievances. (JA 213; DE 35-5 at 11.) This trusteeship is still ongoing.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Count I of the amended complaint as to the Nonmember Plaintiffs because, as nonmembers, they are unable to allege a claim under Section 304 of the LMRDA, 29 U.S.C. § 464. (JA 431; DE 55 at 11.) The plain language of the local's bylaws requires all new members to be approved

by a vote of the membership. The Nonmember Plaintiffs concede that they were never so approved, but argue that the local's bylaws have been rendered inoperative because of past practice. The district court rejected this argument and instead correctly agreed with the ILA's interpretation of its governing documents and the ILA's determination of who constitutes a member. (JA 428-31; DE 55 at 8-11.) The district court recognized that the local's bylaws vested authority in the local membership to approve or disapprove new members such that no individual can claim membership if that approval has been withheld. (JA 430; DE 55 at 10.)

The district court further held that all the plaintiffs—including union members—had failed to state a claim under Section 304 of the LMRDA and therefore dismissed Count I in its entirety pursuant to Rule 12(b)(6). (JA 433; DE 55 at 13.) First, the district court noted that there were no procedural violations in the imposition of the trusteeship. (JA 432; DE 55 at 12.) Second, the district court rejected Plaintiffs' contention that the ILA's proffered reasons for the trusteeships—the violations of the bylaws and the admission of sham members—was a pretext for another impermissible reason. (JA 433; DE 55 at 13.)

Confronted with the failure to plead facts in their amended complaint, Plaintiffs go outside the record to raise new facts in their brief—facts not pleaded in either the first or amended complaints or anywhere else in the record. But those new facts do nothing to support Plaintiffs' claim. On the other hand, the facts that

ILA relied on as reasons for the continuation of trusteeship are referenced in the prehearing notice. The law is clear that so long as one of the reasons cited by the ILA in support of its decision was also cited in the prehearing notice, and was valid—meaning that it was not pretext for bad faith and was not for an improper purpose—a presumption of validity attaches to the trusteeship.

The ILA has consistently stated that the purpose for imposing the trusteeship was to "restore democratic procedures." Plaintiffs have failed to raise an issue of material fact that a proper purpose for the trusteeship did not exist. Therefore, Plaintiffs have failed to show clear and convincing evidence that the reasons given were a mere pretext for accomplishing an improper purpose. Moreover, the amended complaint concedes the facts on which the ILA based the trusteeship: namely, that Local 333 was poised to admit 500-plus individuals into membership without complying with the local bylaws.

In Count II the Nonmember Plaintiffs alleged that the ILA violated Section 301 of the LMRA, 29 U.S.C. § 185, by rejecting their admission membership in union membership. The district court correctly dismissed this claim due to Nonmember Plaintiffs' lack of standing. (JA 435; DE 55 at 15.) Courts have uniformly held that individuals who are not members of a union lack standing to bring a claim against a union for breach of an International Constitution.

13

Moreover, even if the Nonmember Plaintiffs did have standing to sue for breach of the ILA Constitution under LMRA Section 301, their claim should still be dismissed under Rule 12(b)(6). The foundation of their claim is that the ILA Constitution prohibits locals from establishing additional requirements for membership. To make this argument, Nonmember Plaintiffs deliberately mislead this Court by not quoting the last sentence of the membership provision of the ILA Constitution.

Finally, Count III of the amended complaint alleged violations of a 1970 consent decree issued by Judge Alexander Harvey, II, formerly of the United States District Court for the District of Maryland. The district court dismissed this count because Plaintiffs lacked standing to sue to modify a consent decree to which they were not a party. (JA 437; DE 55 at 17.)

Plaintiffs do not point to a specific provision of the decree or explain how the amended complaint alleges that provision has been violated. In fact, a review of the allegations in the amended complaint reveals that they have nothing to do with the Harvey decree. The Harvey decree mandated that two racially segregated ILA locals should be merged, and the seniority list should be merged with them. (JA 127-45; DE 28-3.) Plaintiffs' Count III is simply an attempt to avoid the requirement of pleading and proving a new lawsuit under Title VII under a disparate impact theory. (JA 437; DE 55 at 17.)

14

# ARGUMENT

## STANDARD OF REVIEW

This Court reviews *de novo* claims that have been dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 505 (4th Cir. 2015) (Rule 12(b)(1) dismissal) (citing *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009)); *Andon, LLC v. City of Newport News*, No. 12-2358, 2016 U.S. App. LEXIS 2237, at *6 (4th Cir. Feb. 9, 2016) (Rule 12(b)(6) dismissal); *Alipui v. Byerson*, 2016 U.S. App. LEXIS 914 (4th Cir. Jan. 20, 2016) (Rule 12(b)(6) dismissal).

## Rule 12(b)(1)

A plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres.Ass'n v. Cty. Comm'rs of Carroll Cty.,* 523 F.3d 453, 459 (4th Cir. 2008).  When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings.  *Blitz v. Napolitano,* 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004)).

**Rule 12(b)(6)**

When ruling on a motion under Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

The mere recital of elements of a claim, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citation omitted). "To satisfy this standard, the complaint must allege sufficient facts to establish those elements." *Walters,* 684 F.3d at 439 (internal citation omitted).

## I.

### THE DISTRICT COURT CORRECTLY HELD THAT THE NONMEMBER PLAINTIFFS COULD NOT STATE A CLAIM UNDER THE LMRDA

Count I of Plaintiffs' amended complaint alleged that the ILA violated Sections 302 and 304 of the LMRDA, 29 U.S.C. §§ 462, 464, when it imposed a trusteeship over Local 333. (JA 92; DE 28 at ¶¶ 42-43.) This claim was brought

by both the Nonmember and the Member Plaintiffs.  The district court dismissed this claim as to the Nonmember Plaintiffs for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6).[8] (JA 431; DE 55 at 11.)

**District Court's Analysis**

The lower court stated it has subject matter jurisdiction over cases alleging violations of the LMRDA, a federal statute, under its federal question jurisdiction. *See* 28 U.S.C. § 1331.  The court continued to indicate that when, as here, defendants challenge an element of a federal statutory claim—specifically, whether a plaintiff is a member of the group(s) entitled to relief—they challenge the sufficiency of the complaint which implicates Rule 12(b)(6).  (JA 428; DE 55 at 8.)

The basis of the district court's well-reasoned decision was that the Nonmember Plaintiffs were not members of Local 333, and, as such, they were unable to state an essential element of an LMRDA claim.  The lower court noted— and the Plaintiffs do not dispute—that the LMRDA provides that only a member of

---

[8] The ILA moved pursuant to Rule 12(b)(1) on the ground that the court lacked subject matter jurisdiction over the Nonmember Plaintiffs' claims because  only members of a labor organization have standing to bring an action under  Section 304 of the LMRDA.  The district court granted the ILA's motion, but pursuant to Rule 12(b)(6), not 12(b)(1).  (JA 431; DE 55 at 11).  Citing *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448, 452 (4th Cir. 2012), the district court ruled that whenever defendants challenge an element of a federal statutory claim— specifically, whether a plaintiff is a member of the group(s) entitled to relief—they challenge the sufficiency of the complaint.  (JA 428; DE 55 at 8.)  Nonmember Plaintiffs do not challenge that ruling on appeal.  The court continued to state that even if the membership requirement was jurisdictional, the Nonmember Plaintiffs' claim would still fail under Rule 12(b)(1).  (JA 431; DE 55 at 11, n. 7.)

a labor organization may file suit for violation of the trusteeship provisions of the LMRDA.  (JA 429; DE 55 at 9 (citing 29 U.S.C. § 464(a).)

The LMRDA defines the term member as follows:

> "Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(o).  Thus, the district court stated that to successfully allege a claim under the LMRDA, the Nonmember Plaintiffs need to have "fulfilled the requirements for membership."  (JA 429; DE 55 at 9.)

The district court noted that an applicant is not a "member" under the LMRDA if the union must take an action to bestow membership and it fails to do so.[9] (JA 430; DE 55 at 10 (citing *Moynahan v. Pari-Mutuel Emps. Guild of Cal., Local 280,* 317 F.2d 209, 210 (9th Cir. 1963) (finding plaintiff who had met all the

---

[9]  As the court in *Feist v. Nat'l Eng'rs Beneficial Ass'n*, 118 L.R.R.M. (BNA) 2421 (E.D.L.A. 1983) stated:

> There is a definite distinction between "members" and "applicants" and rights afforded to them, respectively. "Membership" status is obtained *only* upon payment of the initiation fee and dues, and, most importantly, upon being accepted by a majority of the membership.

*Id*. at 2421 (emphasis added).

requirements was not a member under the LMRDA because he had not received the required two-thirds favorable vote of the current members); *Stanley v. Int'l Bhd. of Elec. Workers,* 207 Fed. Appx. 185, 188 (3d Cir. 2006) ("When a union's constitution gives the local union the discretion to accept or deny membership to applicants, unsuccessful applicants have not fulfilled the requirements for membership, and thus are not members of the local union."); *Worthy v. Gen. Longshoremen's Workers Int'l Longshoremen's Ass'n, Local 333*, Civil Action No. 01-3683, 2002 U.S. Dist. LEXIS 22813, at *13 (E.D. La. Nov. 26, 2002) (quoting *In re Carta*, 618 F.2d 1093, 1103 (5th Cir. 1980) ("[I]f the local reserved that right [to refuse membership], or required a vote of admittance, the plaintiff had not fulfilled the requirements for membership; and was not a member . . . .")). Applying this settled law, the district court then held that, by their own admission, Nonmember Plaintiffs have not fulfilled all the requirements for membership in ILA Local 333.  (JA 430; DE 55 at 10.)

**Plaintiffs' Position**

Plaintiffs do not dispute the district court's reasoning.  Plaintiffs concede both that Local 333's bylaws require that an applicant be approved by a vote of a majority of the membership before he is deemed a member, and that none of the 500-plus nonmembers ever received this vote of approval.  (*See* Appellants' Brief 6–7.) Moreover, Nonmember Plaintiffs do not dispute that this very issue was

considered by two ILA Committees at internal union hearings and that both Committees specifically ruled that the bylaw provision complied with the ILA Constitution and the individuals in question were not ILA members under the ILA Constitution.  (JA 285-93; DE 46 at 2-10.)[10]

On appeal, Plaintiffs make an extremely half-hearted argument in support of their position; stating simply that the Nonmember Plaintiffs are ILA members no matter what.  They cite no cases that affirmatively support their position; nor do they attempt to dispute the district court's legal reasoning or the ILA's rulings that are entitled to deference.  Nonmember Plaintiffs completely ignore the high burden they have to overturn ILA's clear interpretation of its own governing documents.  Rather, they merely try to distinguish one Second Circuit decision relied upon by the district court.  But even in that attempt Plaintiffs misstate the legal holding of that case and mischaracterize the facts of this case in a way that is directly contrary to what they alleged in their amended complaint.

---

[10] The law is clear that "great deference is due a union's interpretation of its own [c]onstitution and . . . such an interpretation should not be disturbed unless it is 'patently unreasonable.'"  *Papianni v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 11*, 622 F. Supp. 1559, 1567 (D.N.J. 1985) (quoting *Local 334, United Ass'n of Journeymen v. United Ass'n of Journeymen*, 669 F.2d 129, 131 (3d Cir. 1982)).  It was eminently reasonable for the ILA to interpret the plain language of the bylaws as written.

Local 333's bylaws provide, in relevant part, as follows:

> [a]n applicant having made their application in proper form, having paid the initiation fee and **having been approved by a vote of a majority of the membership** present at a regular or special meeting of this Local Union shall be deemed a member.

(JA 218; DE 35-7 at ¶ 2 (emphasis added).)  The Nonmember Plaintiffs concede that their admission was never approved by a vote of a majority of the membership.  However, they argued to the district court that Local 333 has never followed such a procedure.  (Appellants' Br. 6.)   The district court rejected this argument and correctly held that "failure to follow a requirement in the past does not render it inoperative."  (JA 430; DE 55 at 10) (relying on *Brady v. Int'l Bhd. of Teamsters, Local 817,* 741 F.3d 387, 390 (2d Cir. 2014) ("In any event, that IBT Local 817 perhaps only rarely exercised its discretion to reject an eligible applicant did not disable it from rejecting Brady's application.")).

Unable to find any caselaw to support their legal position, Plaintiffs rest their entire argument on an attempt to distinguish the *Brady* case.  Plaintiffs argue that, unlike *Brady*, where the discretion to approve new members was rarely used, in this case the discretion to approve or disapprove new members (as spelled out in the bylaws) has never allegedly been used at all.

In *Brady*, 741 F.3d 387, the Second Circuit affirmed the lower court's dismissal of an LMRDA claim against a local union for lack of subject matter

jurisdiction because the plaintiff was neither a formal member nor a "member in substance." 741 F.3d at 390. Notwithstanding his lack of formal membership in the union, the plaintiff claimed that the LMRDA protected him because he was a "member in substance" of the union; that is, he was a person who satisfies all of the requirements for membership set forth in a union's constitution but merely lacked formal admission. *Id.* at 389.

Consistent with sister circuits, the Second Circuit held that the plaintiff could not rely on the "member in substance" protections under the LMRDA to invoke federal court jurisdiction. *Id.* at 390. The court noted the union's constitution did not require Local 187 to accept every eligible applicant for membership (*i.e.*, it retained discretion on membership). The Second Circuit noted that IBT Local 817 perhaps only rarely exercised its discretion to reject an eligible applicant, but this did not disable it from rejecting Brady's application and therefore did not make the requirement "ministerial" in nature.

Thus, the issue in *Brady*—consistent with prior caselaw from other circuits—is whether the requirement for membership approval was merely "ministerial." The Second Circuit defined a ministerial requirement as a requirement that does not provide the union discretion, *i.e.*, where a union must admit an applicant and where the additional requirement of formal admission of a

union applicant is merely a technicality. *Id.* The operative point is whether the union retained the discretionary authority to make such an approval. *Id.* at 389–90.

The Second Circuit stated that "even an eligible applicant for membership is not considered a member until the union 'accept[s]' his application, which it is not required to do." *Id.* at 390. As in *Brady*, the union's constitution is identical to Local 333's bylaws in that it gave the union discretion over membership applications. Local 333's bylaws give the membership the discretion to approve applicants; thus, whether the union membership ever elects to exercise that discretion is completely immaterial to the *Brady* analysis.

As the district court further noted, the express and unambiguous language of the ILA Local 333's by-laws makes an affirmative vote a requirement for membership. "The Union constitution is a contract between the Union and its members[.]" *Int'l Org. of Masters, Mates, & Pilots v. Prevas,* 175 F.3d 341, 343 (4th Cir. 1999). "Although courts use course of performance and course of dealing in interpreting contract terms, express terms are given greater weight. *Riethman v. Berry,* 287 F.3d 274, 277 (3d Cir. 2002) (quoting Restatement (Second) of Contracts § 203(b) (1981)). Nonmember Plaintiffs do not even attempt to argue that bylaws are ambiguous; they simply insisted that they should be ignored. This

claim is not only devoid of any legal authority, it is also belied by the facts set forth in the amended complaint.[11]

As the district court alluded to, a review of the documents integral to the amended complaint shows that the local's bylaws were **not** consistently ignored in the past. It is undisputed that in March 2012, the membership of ILA Local 333 voted to stop the admission of new members into the union pending further negotiations of the collective bargaining agreement. (JA 430; DE 55 at 10.) This vote was clearly premised on the fact that the membership had the authority and the discretion to control admissions to membership—an understanding perfectly consistent with the plain terms of the bylaws.[12]

---

[11] In considering a Rule 12(b)(6) motion, a court does not have to limit its review to the pleadings. It can consider public records, "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

[12] By not following the clear written requirements of the Local's bylaws, and attempting to sneak new members in without membership approval, McKenzie and the other local officers ignored the express directive of the Local's membership to cease admitting new members until they settled the CBA contract dispute. (JA 430; DE 55 at 10.) It was this brazen disregard of both the will of the membership and the terms of the bylaws which caused a member to file charges with the ILA that led to the trusteeship.

**Additional Arguments Raised By Plaintiffs**

Plaintiffs further argue—puzzlingly and without any basis—that the International was somehow complicit in Local 333's violation of its bylaws.[13] Plaintiffs spend a great deal of their argument discussing two specific individuals on whose behalf the International wrote asking that they be admitted to membership unless good cause could be shown as to why admission was denied. Plaintiffs then allege that these two individuals were admitted to membership without being voted upon, in violation of the local's bylaws. (Appellants' Br. 9-10.) Plaintiffs would have this Court believe that the International was aware of Local 333's misconduct all along. However, Plaintiffs make no factual allegations as to how the International actually new or could have known. Nor can they.

President Daggett's letter requested that Local 333 either admit the individuals or provide good cause as to why they were not admitted. As such, the letter undermines Plaintiffs' argument because it shows that the ILA President was acknowledging that the local has discretion to disapprove the individuals' membership.[14]

---

[13] Plaintiffs also make the absurd argument that any current member of ILA Local 333 who cannot show that his initiation was approved by vote must now have his union membership revoked. Plaintiffs cite no legal or factual basis for this assertion.

[14] If Local 333 violated its own bylaws when it admitted those two individuals, no complaint about the procedure was ever brought to the International's attention.

This is not the first time that the ILA has taken the position in a court that an ILA local has this right to require applicants to be approved by the membership. In the context of ILA Local 3000 in New Orleans, which has a similar requirement as Local 333, the United States District Court for the Eastern District of Louisiana specifically held that if an individual failed to obtain the required vote for admittance, then he cannot say that he has "fulfilled the requirements for membership," and he is not a member of the ILA. *Worthy v. Gen. Longshoremen's Workers Int'l Longshoremen's Ass'n, Local 333*, Civ. Action No. 01-3683, 2002 U.S. Dist. LEXIS 22813, at *13 (E.D. La. Nov. 26, 2002) (citing *In re Carta* at 1103 ("[I]f the local reserved that right [to refuse membership], or required a vote of admittance, the plaintiff had not fulfilled the requirements for membership; and was not a member . . . .")). Nonmember Plaintiffs' attempt to allege an LMRDA claim is equally untenable.

Judicial deference on issues of membership is proper because the "LMRDA does not prescribe requirements for membership but instead recognizes the right of

---

The International can only be made aware of bylaws violations if someone complains—that is what happened in this case. Indeed, as the first ILA Committee noted, it was the complaint of a Local 333 member, Brother Ronald Barkhorn, that prompted the entire investigation leading to this trusteeship. (JA 191-99; DE 35-3 at 5-13.)

unions to choose their own members."[15] *Basilicato v. Int'l Alliance of Theatrical Stage Emps.*, 479 F. Supp. 1232, 1235 (D. Conn. 1979) (citing *Hughes v. Local 11, Int'l Ass'n of Bridge, Structural, & Ornamental Ironworkers*, 287 F.2d 810, 817 (3d Cir.), *cert. denied*, 368 U.S. 829 (1961); *Vincent v. Plumbers & Steamfitters, Local 198*, 409 F. Supp. 206, 211 (M.D. La. 1976); *Axelrod v. Stoltz*, 264 F. Supp. 536, 539 (E.D. Pa. 1967), *aff'd*, 1391 F.2d 549 (3d Cir. 1968)); *see also Moynahan v. Pari-Mutuel Emps. Guild, Local 280*, 317 F.2d 209, 210 (9th Cir.), *cert. denied*, 375 U.S. 911 (1963) ("[L]egislative history persuasively demonstrates that Congress did not intend [29 U.S.C. § 402(o)] to limit the previously recognized rights of unions to choose their members.").

The fact that Local 333's bylaws grant the Local the discretion to approve individuals for membership is consistent with the "clearly expressed congressional purpose" in the LMRDA "to afford unions wide discretion in their choice of membership." *Wallace v. Int'l Org. of Masters, Mates & Pilots*, 547 F. Supp. 155, 157 n.4 (S.D.N.Y. 1982). As was the case in *Wallace*, Local 333's bylaws reserve to the union the "right to refuse membership." *Id*. at 157. In *Wallace*, the union's executive committee rejected the plaintiff's application for membership. *Id.* at 156. As the court explained, because the union's constitution "prescribed" that the

---

[15] Approximately forty individuals challenged their denial of membership by filing unfair labor practices with the National Labor Relations Board. These charges were all reportedly dismissed or withdrawn. (JA 182; DE 35-1 at ¶ 7.)

"application for membership . . . [was] subject to approval" by the executive committee, the application itself could "not constitute membership or result in any vested right" to membership. *Id.* (granting motion to dismiss plaintiff's LMRDA claim).

When all is said and done, Nonmember Plaintiffs' appeal of their LMRDA claim is much ado about nothing. Even if this Court holds Nonmember Plaintiffs are actually members, they still cannot state a claim, given that the district court also held that even the member plaintiffs failed to state a claim under LMRDA § 304.[16]

## II.

### THE DISTRICT COURT CORRECTLY HELD THAT THE AMENDED COMPLAINT FAILED TO ALLEGE FACTS THAT THE TRUSTEESHIP WAS IMPOSED FOR AN IMPROPER PURPOSE

**Statutory Scheme**

In enacting the LMRDA, Congress recognized that trusteeships "are among the most effective devices which responsible international officers have to insure order within their organization and, therefore, was "careful not to interfere with the

---

[16] Plaintiffs have repeatedly taken the position that the Nonmember Plaintiffs are not attempting to bring a separate LMRDA claim for denial of union membership. (JA 285; DE 46 at 2.) Such a claim is non-existent. *See, e.g., Abrams v. Carrier Corp.*, 434 F.2d 1234, 1254 (2d Cir. 1970) ("Wrongful denial of union membership does not come within the ambit of either § 301 of the LMRA or § 102 of the LMRDA.").

necessary and fully legitimate use of trusteeship, including compliance with provisions of the union's constitution insofar as they are consistent with the standards of act." S. Rep. No. 187, 86th Cong., 1st Sess., pt. III, *reprinted in* 1959 U.S. Code Cong. & Admin. News 2318, 2333; *see also Jolly v. Gorman*, 428 F.2d 960 (5th Cir. 1970), *cert . denied*, 400 U.S. 1023 (1971).[17]

The focus of any inquiry into the validity of a trusteeship is Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), which provides, in relevant part, as follows:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and by-laws and authorized or ratified after a fair hearing…shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attach during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

The LRMDA places limited restrictions on both the purposes and the length of a trusteeship. *See* 29 U.S.C. §§ 462, 464. To challenge successfully the imposition of trusteeship, a plaintiff must demonstrate either that the trusteeship was not imposed in conformity with procedural requirements or that the trusteeship

---

[17] The LMRDA specifically contemplates emergency trusteeships being imposed before a hearing is conducted. The Act provides that a trusteeship may be 'authorized *or ratified* after a fair hearing,' meaning the hearing requirements of the Act need not always precede the imposition of a trusteeship. *Becker v. Indus. Union of Marine & Shipbuilding Workers*, 900 F.2d 761, 769 (4th Cir. 1990) (quoting 29 U.S.C. § 464(c)) (internal citations omitted) (emphasis deleted).

was not established or maintained in good faith for a purpose allowed by statute. *Nat'l Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 921 (2d Cir. 1971).

**The District Court's Decision**

On the question of procedural regularity, the district court found that the ILA did follow all the proper procedural guidelines when imposing the trusteeship. The district court held that the trusteeship was imposed "in accordance with the minimum fair hearing requirements." (JA 432; DE 55 at 12 (citing *Becker v. Indus. Union of Marine & Shipbuilding Workers.,* 900 F.2d 761, 768 (4th Cir. 1990)).)[18] No appeal was filed challenging this finding.

The district court then addressed plaintiffs claim that the trusteeship hearing was not imposed for a proper purpose. The lower court noted that plaintiffs alleged the trusteeship's stated purpose, "restoring democratic procedures," was pretextual. The district court then held plaintiffs' allegation, that the trusteeship was not imposed for a proper purpose, falls short under *Twombly*. (JA 433; DE 55 at 13.) Plaintiffs concede they did not follow the bylaws when admitting approximately 500 new members. *Id.* This occurred in the months preceding Local 333 leadership elections and a vote on a collective bargaining agreement.

---

[18] "A fair hearing has three minimum requirements: (1) notice of the charges, (2) presentation of evidence and witnesses, and (3) an opportunity for cross-examination." Plaintiffs do not challenge this finding on appeal, and, therefore, it has been abandoned. *Martinez*, 524 Fed. Appx. at 935 . Once a court has concluded that a trusteeship was imposed in a procedurally proper manner, the trusteeship is presumed valid.

The court noted plaintiffs rely on this timeline to argue the trusteeship was imposed with pretextual intent.

The district court stated that the "timeline dictated by their violation of the bylaws was not enough to push 'their claims across the line from conceivable to plausible.'"   *Id.* (citing *Twombly*, 550 U.S. at 570). This court has upheld dismissals where a plaintiff failed to plead facts.   *Hill v. SCA Credit Servs.*, 622 Fed. Appx. 231, 232 (4th Cir. 2015) (failure to articulate facts to demonstrate a plausible claim); *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 587–88 (4th Cir. 2015) (affirming dismissal because complaint left open to speculation the decision to hire someone else); *Marks v. Dann*, 600 Fed. Appx. 81, 87–88 (4th Cir. 2015) (affirming dismissal where appellants failed to allege enough for court to "discern" an element of the claim); *Rodriguez v. Doe*, 549 Fed. Appx. 141, 146 (4th Cir. 2013) (affirming dismissal where complaint did not establish plausibility).

**Plaintiffs' Arguments**

Confronted with the fact that they failed to plead facts in their amended complaint, Plaintiffs try a new tactic on this appeal and go outside the record to raise new facts in their brief—facts not plead in either the first or amended complaints or anywhere else in the record.[19]  In their brief to this Court, Plaintiffs

---

[19]  Plaintiffs' Brief contains scant references to the record.  In fact, what they purport to be record cites are references to their memorandum of law submitted to the lower court.  (*See* Appellants' Br. 6, 12.)  Indeed, of all their cites to the Joint

state that, after the February 2015 ratification vote where the membership voted down the proposed contract, "in order to secure the votes that he needed to prevail on the next contract ratification vote, the Trustee proceeded to convince 19 crane mechanics to apply for membership . . . and to vote in favor of the next contract ratification proposal." (Appellants' Br. 15.) The Plaintiffs then contend that the second ratification vote that occurred on March 25, 2015 would have likewise been voted down had it not been for the addition of the votes from the crane mechanics. *Id.*

Plaintiff would have this Court believe that they can simply raise these factual claims in their opening brief to make up for the shortage in their amended complaint. These facts, are not alleged in Plaintiffs' amended complaint, nor are they found anywhere in the record. They are raised for the first time on this

---

Appendix, Appellants' Brief contains only a **single** reference to their amended complaint and, even then, it refers this Court to the first page of the complaint where plaintiffs' names are listed. (*See* Appellants' Br. 17.) All of the other record cites, however, refer to matters that were neither contained in plaintiffs' first complaint nor their amended complaint. All the other citations refer to Plaintiffs' Memorandum of Law in Opposition to the ILA's Motion to Dismiss. It is well settled in the Fourth Circuit that "statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 449 (4th Cir. 2011) (citing *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 825 (4th Cir. 2010)).

appeal.[20]  These facts go beyond the pleadings and "it is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also Echenique v. Convergys*, 473 Fed. Appx. 323, 324 (4th Cir. 2012) (declining to consider new evidence presented on appeal).  Such facts may not be considered by this Court on appeal.  *Openband at Broadlands LLC*, at 184; *Echenique*, at 324.

These new facts, even properly pleaded, are irrelevant.  The ILA relied on specific reasons for the continuation of the trusteeship that **are** referenced in the pre-hearing notice and in the decision.  The law is clear that so long as **one** of the reasons cited by the ILA in support of its decision was also cited in the pre-hearing notice, and was valid—a presumption of validity attaches to the trusteeship.  *See, e.g.*, *Pape v. Local 390, Int'l Bhd. of Teamsters*, 315 F. Supp. 2d 1297, 1314 (S.D. Fla. 2004); *Morris v. Hoffa*, Civil Action No. 99-5749, 2001 U.S. Dist. LEXIS 16692, at *14-19 (E.D. Penn. 2001); *Mason Tenders Dist. Council v. Laborers' Int'l Union*, 884 F. Supp. 823, 836 (S.D.N.Y. 1995).  That is because one legally permissible purpose is all that is required for a valid trusteeship, *Sombrotto*, at 923;

---

[20] The Sixth Circuit has explained:  "Congress intended that decisions by international officials to impose trusteeships be upheld and not rejected on the basis of disputed facts or on disputes over the judgment or necessity for imposing a trusteeship."  *Teamsters Local Union No. 406 v. Crane,* 848 F.2d 709, 715 (6th Cir. 1988).

*C.A.P.E. Local Union 1983, IBPAT v. Int'l Bhd. of Painters & Allied Trades*, 598 F. Supp. 1056, 1075 (D.N.J. 1984), and an improper motive "will only invalidate the trusteeship if no other valid motive was present." *Mason Tenders*, 884 F. Supp. at 836.

Courts have also noted that "the establishment of a single purpose for establishing the trusteeship is sufficient to determine that the trusteeship is valid under Title III, even in the presence of additional allegedly improper motives." *See Morris*, at *21 (citing *Mason Tenders Dist. Council v. Laborers' Int'l Union*, 884 F. Supp. 823 (S.D.N.Y. 1995)). In other words, "an improper motive 'will only invalidate the trusteeship if no other valid motive as present.'" *Morris*, at *21 (quoting *Mason Tenders Dist. Council*, 884 F. Supp. at 836)).

The findings, as to the existence of at least one proper propose for maintaining the trusteeship, are uncontroverted. Plaintiffs' hope to create an issue of fact by showing the existence of other improper purposes and motives for establishing and maintaining the trusteeship without demonstrating that there was no proper purpose under Title III.

**The Purpose of the Trusteeship**

Consistently throughout this litigation, the ILA has stated that the purpose for imposing the trusteeship was to "restore democratic procedures," specifically the membership voted not to accept any nonmembers, the Local 333 President

McKenzie was trying to admit 500-plus individuals into membership by taking their money, having them sign a waiver of any right to a refund if there was no work or if they were unable to work. Even at this late day, plaintiffs do not deny that they had never had applicants sign a waiver form in the past. Who is kidding whom? By bringing in 500 members with no prospect of employment, plaintiffs were trying to manipulate the size of the membership for the upcoming votes.

It is no wonder that plaintiffs tried to hide this fact from the membership. Not only have Nonmember Plaintiffs failed to obtain approval by a majority vote from the membership, but also the ILA Committees found that few, if any, of the 500-plus applicants were seeking work under Local 333's CBA. (JA 198; DE 35-3 at 12.) Plaintiffs conceded in their brief to the district court that a full 20% of the 500 applicants had never worked under the collective bargaining agreement. (JA 301; DE 46 at 18.) Plaintiffs lack the temerity to defend this practice to this Court in their principal brief.

It is well settled that if there is substantial evidence then it is likely any claim of lack of good faith must fail. *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d 709 (6th Cir. 1988). "We will not set aside the judgment of the authorized union office so long as there is 'substantial evidence' upon which the union official acted." *Id.* at 713. Courts are to give deference to the judgment of a union official who imposes a trusteeship so long as there is "substantial evidence" to support the

reasons proffered in support of the trusteeship. *Id.* Courts have consistently held it improper for a court to substitute its own judgment for that of the union, particularly when there is substantial evidence to support the union's findings. *See, e.g., Teamsters Local Union No. 2000 v. Hoffa*, 284 F. Supp. 2d 684, 691 (E.D. Mich. 2003).

Plaintiffs' contrary view of the evidence relied upon by the ILA does not negate the existence of that evidence. *See e.g., Massey v. Int'l Bhd. of Teamsters, Local 738*, No. 03-C-2410, 2003 U.S. Dist. LEXIS 7474 (N.D. Ill. May 5, 2003) (court refused to impute bad faith based on plaintiffs' evidence that the International's may have been based on incorrect facts). Thus, even if Plaintiffs' suggested inferences drawn from the same evidence are reasonable, they do not serve to create a factual issue concerning wehther the ILA's decision was supported by substantial evidence and is therefore entitled to deference. *Local No. 2000*, 284 F. Supp. 2d at 692; *Crane*, 848 F.2d at 713; *see also Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 933 (11th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")).

The ILA's stated reasons for continuing the trusteeship fall squarely within the purposes identified in 29 U.S.C. § 462. Although Plaintiffs dispute the facts

Defendants relied upon for continuing the trusteeship, they have failed to raise an issue of material fact that a proper purpose for the trusteeship did not exist. *See Serv. Emps. Int'l Union, Local No. 87 v. Serv. Emps. Int'l Union, Local No. 1877*, 230 F. Supp. 2d 1099, 1105 (N.D. Cal. 2002).

However, those conclusory allegations are not sufficient when the amended complaint concedes the facts upon which the ILA based for establishing the trusteeship: namely, that Local 333 was poised to admit 500-plus individuals into membership without complying with Local bylaws. Having conceded that Local 333 was ignoring its own bylaws, a dispute about interpreting membership status is not sufficient to show improper purpose. Trustee Wilbert Rowell explicitly stated in his charges that his concern was that the local union officers were intent on admitting 500-plus individuals that had little or no ties to the longshore industry and that would then be allowed to vote on contract proposals that affected actual longshore workers.

The Plaintiffs do not dispute these facts. As even the district court noted when dismissing their claim, "Plaintiffs concede they did not follow the bylaws when admitting approximately 500 new members." (JA 433; DE 55 at 12.) In their brief on appeal, Plaintiffs, once again, concede that they ignored their own bylaws. *See Exec. Bd. Local 1302 v. United Bhd. of Carpenters & Joiners of Am.*, 477 F.2d 612, 615 (2d Cir. 1973); *see also Crane*, at 714 (quoting S. Rep. No. 187,

86th Cong., 1st Sess. at 18 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2334). Here, having conceded that Local 333 was ignoring its own bylaws, a dispute about interpreting membership status is not sufficient to show improper purpose.

Accordingly, Plaintiffs have failed to allege by facts that the trusteeship was imposed for a pretextual purpose. Therefore, this Court should affirm the district court's decision to dismiss their claim under Section 302 of the LMRDA.

## III.

### THE DISTRICT COURT CORRECTLY HELD THAT THE NONMEMBER PLAINTIFFS LACK STANDING UNDER LMRA § 301

In Count II of the amended complaint the Nonmember Plaintiffs alleged that the ILA violated Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, by rejecting their membership in the ILA and Local 333 in violation of the ILA Constitution. The district court correctly dismissed this claim due to Nonmember Plaintiffs' lack of standing.

By its terms, Section 301 of the LMRA provides federal jurisdiction over suits for violation of a contract between an employer and a union. *See* 29 U.S.C. § 185. "[A] suit properly brought under § 301 must be a suit either of violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor

organizations." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 98 (1991).

At one time most courts held that even an actual union member lacked standing to sue a union in federal court to enforce an international constitution. In *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93 (1991), however, the Supreme Court of the United States held that an individual member may sue an international union in federal court to enforce a provision of the international constitution. *Id.* at 98–101. In *Wooddell*, the Supreme Court made clear that the breach of contract claim is available to union members *only*. 502 U.S. at 99 n.4. That is because a "[p]arty invoking federal jurisdiction [must] have standing—the 'personal interest that must exist at the commencement of the ligation.'" *Davis v. FEC*, 554 U.S. 724, 732 (2008) (internal citations omitted). A plaintiff who is not a union member lacks personal standing to enforce the provision of the union constitution. *See Wooddell*, 502 U.S. at 99 n.4.

Following *Wooddell*, courts have uniformly held that individuals who are not members of a union lack standing to bring a claim against a union for breach of an International Constitution. *Lexington Cartage Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, Nos. 80-48, 81-102, 1982 U.S. Dist. LEXIS 12398, at *6 (E.D. Ky. Feb. 23, 1982) ("Plaintiff also alleges the violation of certain strike provisions contained in the constitution of defendant International

and in the by laws of defendant Local in the *Lexington Cartage* case.  Plaintiff, not being a member of the Union, has no standing to assert such claims."); *Scanz v. New York Times*, No. 97-Civ-1042 (PKL), 1997 U.S. Dist. LEXIS 10285 (S.D.N.Y. July 16, 1997); *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F. 2d 819 (9th Cir. 1993) ("[Karo] does not have standing to sue as a third party beneficiary because he had no vested rights at the time that the agreement was amended."); *Austin v. Int'l Bhd. of Elec. Workers*, No. 11-CV-1029 (CEJ), 2012 U.S. Dist. LEXIS 27904, at *14 (E.D. Ms. Mar. 2, 2012) ("In fact, plaintiff, who is neither union member nor the intended beneficiary of a labor contract, likely lacks personal standing to enforce the provisions of IBEW's constitution.");  *United Bhd. of Carpenters v. Helpers Union Local 88*, 740 F. Supp. 167, 169 (E.D.N.Y. 1990) ("Defendants concede that persons not members of a union normally lack standing to bring a claim against it for breach of its own constitution."); *Moore v. Local 569*, 653 F. Supp. 767, 772 (S.D. Cal. 1987).

This is because persons who are neither parties to a particular contract nor beneficiaries under it cannot assert claims for its breach.  *See Cnty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984); *Sepulveda v. Pac. Maritime Ass'n*, 878 F.2d 1137 (9th Cir. 1989) (holding that job applicants were not third-party beneficiaries of collective bargaining agreement provisions establishing hiring procedures).  Nonmembers are not intended beneficiaries of the

union constitution.  *See Int'l Union, United Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895, 898 (4th Cir. 1992).  Union members are usually recognized as third-party beneficiaries to a union contract in a "limited exception" to the "general rule that section 301 litigants must be parties to the relevant bargaining agreement." *Id*.

The district court noted that an international union's "constitution may be fairly characterized as a contract between labor organizations."  *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry,* 452 U.S. 615, 619 (1981).    The district court correctly found that the "[N]onmember Plaintiffs are not parties to the ILA Constitution.  Nor are they members of the ILA or Local 333."  (JA 434; DE 55 at 14.)  Applying the Supreme Court's decision in *Wooddell*, holding that individuals who are not union members lack standing to bring a claim against an international union for breach of its own constitution, the district court dismissed the claim for lack of standing. (JA 434-35; DE 55 at 14-15 (citing *United Bhd. of Carpenters & Joiners v. Tile Helpers Union Local 88,* 740 F. Supp. 167, 169 (E.D.N.Y. 1990).)

In their appeal, Nonmembers Plaintiffs do not challenge any of the district court's legal reasoning.  They fail to mention, let along distinguish, the Supreme Court's decision in *Wooddell*.  In fact, their entire argument is based on asking this

Court to create another legal exception to the general rule that Section 301 litigants must be parties to the relevant bargaining agreement. This Court should deny the invitation.

Moreover, even if the Nonmember Plaintiffs did have standing to sue for breach of the ILA Constitution under LMRA Section 301, their claim should still be dismissed under Rule 12(b)(6). The Nonmember Plaintiffs' Section 301 claim is that the enforcement of the provision in the Local 333's bylaws that requires members to be approved by the membership "would impermissibly override the ILA Constitution," by allowing the local to impose an additional requirement for membership. (JA 98; DE 28 at ¶ 67.)

The foundation of their claim is that the ILA Constitution prohibits locals from establishing additional requirements for membership. To make this argument, Nonmember Plaintiffs deliberately fail to cite the entire membership provision of the ILA Constitution. Indeed, they mislead this Court by not quoting the last sentence of the section. (*See* Appellants' Br. 5-6.)

Article XIV, Section 2, of the ILA Constitution sets forth the requirements for membership as follows:

> **Section 2.** Except as hereinafter provided, any worker who is employed or seeks employment in a trade, industry or occupation within the jurisdiction of the I.L.A. shall be eligible to apply for membership and shall be admitted to membership without regard to race, age, sex, citizenship, or ethnic origin thirty (30) days after

42

application unless just cause can be shown for rejection of the application. **Locals are permitted to establish additional requirements for membership so long as these requests comply with applicable law.**

(JA 94; DE 28 at ¶ 51 (emphasis added).)  Nonmember Plaintiffs simply pretend that the last sentence does not exist.  Thus, the plain language of the ILA Constitution explicitly allows local unions "to establish additional requirements for membership." *Id.*

Consistent with this portion of the ILA Constitution, Local 333 **did** establish additional requirements for membership.  Article V of the Local 333 bylaws sets forth the requirement to become a member of ILA Local 333.  Section 3 of that article states as follows:

> **Section 3.**  An applicant having made their application in proper form, having paid the initiation fee and **having been approved by a vote of a majority of the membership** present at a regular or special meeting of this Local Union shall be deemed a member.

(JA 218; DE 35-7 at ¶ 2 (emphasis added).)  As previously demonstrated, this provision complies with federal law.  Thus, a favorable vote of the existing membership is required before any person is admitted into membership in Local 333.

# IV.

## PLAINTIFFS HAVE NO STANDING TO SUE TO MODIFY THE HARVEY CONSENT DECREE

Count III of the amended complaint alleged violations of a 1970 consent decree issued by Judge Alexander Harvey, II, formerly of the United States District Court for the District of Maryland. The district court dismissed this count because Plaintiffs lacked standing to sue to modify a consent decree to which they were not a party. (JA 437; DE 55 at 17.)

Defendant-Appellee STA has extensively recounted the legal precedent in its brief: non-parties may enforce the terms of a consent decree in circumstances where the decree allows such enforcement, but non-parties never have standing to sue to **modify** a consent decree. *See* Appellee STA's Brief incorporated herein by reference.

In their one-page argument in their appellate brief, Plaintiffs cite no law; nor do they take issue with the lower court's legal reasoning. They simply declare that the lower court was wrong. Plaintiffs claim that they do not want to modify the consent decree; they only want "to enforce its existing terms." Tellingly, Plaintiffs are unable to be more specific. They do not point to a specific provision of the decree or explain how the amended complaint alleges that provision has been violated.

In fact, a review of the allegations in the amended complaint reveals that they have nothing to do with the Harvey decree.  The Harvey decree mandated that two racially segregated ILA locals should be merged, and the seniority list should be merged with them.  (JA 127-45; DE 28-3.)  Plaintiffs' allegations have nothing to do with any alleged violation of that mandate.  Plaintiffs' Count III is simply an attempt to avoid the requirement of pleading and proving a new lawsuit under Title VII under a disparate impact theory.

For example, Paragraph 149 alleges lack of advancement in the ILA union organization, which is completely unrelated to seniority in the Port of Baltimore.  (JA 118; DE 28 at ¶ 149.)  Paragraphs 150 through 158 concede that new job postings are selected on the basis of seniority; they allege something new: that testing and training has a racially disparate impact.  (JA 119-21; DE 28 ¶¶ 150-58.)  Likewise, Paragraphs 159 through 169 argue that drug testing and discipline have a racially disparate impact—not that seniority is ignored.  (JA 121-23; DE 28 at ¶¶ 159-69.)  Paragraphs 170 through 176 are a rehash of the earlier allegations that certain training has a disparate impact.  (JA 123-24; DE 28 at ¶¶ 170-76.)  And, finally, paragraphs 177 through 179 also make disparate impact allegations about security clearance. (JA 124-25; DE 28 at ¶¶ 177-79.)

It is clear, therefore, that all the disparate impact allegations made in the amended complaint do not allege any violation of the 1970 Harvey Consent Decree. Accordingly, the district court's dismissal of Count III must be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed in all respects.

Date: New York, New York
      March 3, 2016

Respectfully submitted,

/s/Kevin Marrinan
Kevin Marrinan
John P. Sheridan
Marrinan & Mazzola Mardon P.C.
26 Broadway, 17th Floor
New York, NY 10004
kmarrinan@mmmpc.com
jsheridan@mmmpc.com
Tele: (212) 425-3240
Fax: (212) 509-8952

*Attorneys for Defendants-Appellees*
*International Longshoremen's*
*  Association, AFL-CIO; Harold J.*
*Daggett; Benny Holland, Jr.; Stephen*
*Knott; Gerald Owens; and John*
*Baker*

*Of Counsel:*
    Christopher A. Lech

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume  limitation of Fed.  R.  App.  P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief  contains  [12,498] words, excluding the  parts of the
        brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [     ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
        because:

        [ X ] this brief has been prepared in a proportionally  spaced typeface using
        [Microsoft Word 2007] in [14pt Times New Roman]; *or*

        [     ] this brief has been prepared  in a monospaced  typeface  using  [*state
        name  and version  of  word  processing  program*] with  [*state number  of
        characters per inch and  name of type style*].


Dated: <u>March 3, 2016</u>                    <u>/s/Kevin Marrinan</u>
                                               *Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2016, a copy of the foregoing was served, via the Court's EM/ECF system, on the following:

/s/Kevin Marrinan
Kevin Marrinan