In The
# United States Court of Appeals
For The Fourth Circuit

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333; RIKER J. MCKENZIE, JR.; EZEKIEL GIVENS; AVON ALLISON; DERRICK ARTER; JAMES ANDERSON; RASUL A. AQUIL; ANDRE BENNETT; STANLEY BERRY; ALBERT JASON BOYD; GARY D. BREWINGTON; PAUL J. BRISCOE; KENNARD BROWN; QUANTA BROWN; MOAB BROWN-BEY; GARY KENNETH BURRELL; SHERMAN CANNON; JEROME CARTER; STACEY M. CHASE; CHRISTOPHER COLBERT; CARYN J. CONYERS; ANTIONE CRAWFORD; CULMER BARRY, JR.; RICHARD DANIEL; PRENTICE DENNIS; CHRISTOPHER DUNNOCK; ERIC DUVALL, SR.; ERIC DUVALL, JR.; JOHN D. EATON; KEITH FERGUSON; DAMON FLEARY, SR.; ERIKA GAINES; TODD A. GALLOWAY; NATHAN GILMER; SCOTT L. GIVENS; AMANDA GRAVES; JOSEPH B. GREEN, JR.; TEION HAIRSTON; TAAVON HALL; KEASHA HANNAH; JOSEPH A. HARDEN, IV; DIANE HIBLER; DOMENIQUE HOLDEN; SHAWN JACKSON; CARL LEE JOHNSON, JR.; CHARLES JOHNSON; MARIO JOHNSON, JR.; MAURICE JOHNSON; CALVIN E. JONES; GEORGE JONES; WAYNE JONES; PARKER RAY KEY; STEVEN KNIGHT; MARCEL LARKINS; CHARMAINE V. LITTLE; DERICK LITTLE; EUGENE N. LITTLE; TERRY LONG; RODNEY K. MARTIN; JAMES LAMONT MCNAIR; STEVEN B. MILLER, SR.; WALTER C. MOORE; ANWAR MUHAMMAD; DANA MUNDELL; GREGORY JEROME MURRAY; KEVIN MYRICK; CHARLES NELSON, JR.; NATHANIEL L. PRYOR, JR.; TYRONE E. QUEEN, SR.; EMANUEL Q. REED; ALISHA RHODES; MARCUS RICHARDSON; MAURICE SHERROD; VON A. SIMON; EVERETT J SMITH; RANDOLPH SMITH; ANDREW SMITHSON, SR.; BOBBY SYDNOR; KELLY TOREZ TALBERT; ALLEN R. TAYLOR; DELVIN THOMPSON; KEVIN TUCKER; HAYWARD WALLACE; PHILLIP WEST; FREDERICK WHITE; DANTE WILLIAMS; HARRISON WILLIAMS; REGINALD JEROME WILSON; RANDY WRIGHT; JOSEPH EVANS; DARYL ESTEP; ERIC RIDGEWAY; JAMAL EVANS; LAMONT COGER; ALPHONSO WATSON; MAURQUISE MOODY; MAURICE MOODY; JARMALL MCKEEVER; SEMAJ WASHINGTON; RONALD MCBRIDE,**
*Plaintiffs – Appellants*,

v.

**INTERNATIONAL LONGSHOREMEN ASSOCIATION, AFL-CIO; HAROLD J. DAGGETT; BENNY HOLLAND, JR.; STEPHEN KNOTT; GERALD OWENS; JOHN D. BAKER; STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INCORPORATED,**
*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

**BRIEF OF APPELLEE
STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INC.**

Michael J. Collins
THE LAW OFFICES OF MICHAEL J. COLLINS PC
7104 Biter Lane
Highland, Maryland 20777
(410) 967-7614

*Counsel for Appellee Steamship Trade Association of Baltimore, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2499__  Caption: ILA, Local 333, et al v. ILA, AFL-CIO, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Steamship Trade Association of Baltimore, Inc.
 (name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? NO

2. Does party/amicus have any parent corporations? NO

    If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? NO

i

If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? NO

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) YES

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:   There is no such member

6. Does this case arise out of a bankruptcy proceeding? NO

   If yes, identify any trustee and the members of any creditors' committee:

Signature:     *-Michael J. Collins, Esq.*     Date:   3/3/16

Counsel for:  Steamship Trade Association of Baltimore, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on March 3, 2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

*-Michael J. Collins, Esq.*  (signature)                3/3/16 (date)

# TABLE OF CONTENTS

                                                          **Page**

CORPORATE DISCLOSURE STATEMENT ...........................................................i

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF THE CASE ..............................................................................1

SUMMARY OF ARGUMENT ..............................................................................4

ARGUMENT .........................................................................................................4

CONCLUSION ....................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Stephens*,
    875 F.2d 76 (4th Cir. 1989) ................................................................6

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ..........................................................................4

*Brewster v. Dukakis*,
    687 F.2d 495 (1st Cir. 1982) ............................................................10

*EEOC v. Chesapeake & O. R. Co.*,
    577 F.2d 229 (4th Cir. 1978) ............................................................8

*Firefighters Local Union No. 1784 v. Stotts*,
    467 U.S. 561 (1984) ..........................................................................5

*Flexfab, L.L.C. v. United States*,
    424 F.3d 1254 (Fed. Cir. 2005) ........................................................5

*Hook v. Arizona Dep't of Corr.*,
    972 F.2d 1012 (9th Cir. 1992) ..........................................................5

*Horne v. Florez*,
    557 U.S. 433 (2009) ........................................................................10

*Johnson v. Robinson*,
    987 F.2d 1043 (4th Cir. 1993) ..........................................................5

*Schuerman v. United States*,
    30 Fed. Cl. 420 (1994) ......................................................................5

*Sec'y of State for Def. v. Trimble Navigation Ltd.*,
    484 F.3d 700 (4th Cir. 2007) ........................................................ 4-5

*Sewell v. Int'l Longshoremen's Ass'n*,
    2013 U.S. Dist. LEXIS 43615,
    195 L.R.R.M. (BNA) 2688 (D. Md. 2013)......................................................................3

*Thompson v. United States HUD*,
    404 F.3d 821 (4th Cir. 2005) .........................................................................................5

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)......................................................................................................6

*United States v. Int'l Longshoremen's Ass'n*,
    319 F. Supp. 737 (D. Md. 1970)...................................................................................6

*United States v. Michigan*,
    940 F.2d 143 (6th Cir. 1991) ......................................................................................10

*United States v. Western Elec. Co.*,
    894 F.2d 430 (D.C. Cir. 1990)...................................................................................10

*Willie M. v. Hunt*,
    657 F.2d 55 (4th Cir. 1981) .........................................................................................6

**STATUTES**

42 U.S.C. § 2000e
Title VII of the Civil Rights Act of 1964....................................................................2, 8, 10

42 U.S.C. § 2000e-2(c)(2)
Section 703(c)(2) of the Civil Rights Act of 1964 ...............................................................2, 6

42 U.S.C. § 2000e-2(h)
Section 703(h) of the Civil Rights Act of 1964......................................................................8

**RULES**

Fed. R. Civ. P. 60(b) ...............................................................................................................10

Fed. R. Civ. P. 60(b)(5).............................................................................................................10

**OTHER AUTHORITY**

46 Am. Jur. 2d Judgments § 195 (2d ed. elec. 2011) .................................................5

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333, et al., | * * * | |
| Appellants, | * * | |
| v. | * * | Appeal No.: 15-2499 (1:15-cv-813) |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, et al., | * * * * | |
| Appellees. | * | |

* * * * * * * * * * * * *

## RESPONSE BRIEF OF APPELLEE
## STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INC.

The Steamship Trade Association of Baltimore, Inc. (the "STA"), one of the Appellees, hereby submits this Response Brief in opposition to the appeal of the Order of the United States District Court for the District of Maryland dated October 30, 2015, granting the STA's Motion to Dismiss Count III of the Complaint, which was the sole Count directed against the STA in this case.

### I. STATEMENT OF THE CASE

More than forty years ago the United States brought a civil action seeking injunctive relief against various labor organizations at the Port of Baltimore

1

because of alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). The suit was brought for the purpose of terminating racially discriminatory practices engaged in by Locals 829 and 858, unions affiliated with the International Longshoremen's Association (the "ILA"). JA 60-68. Local 829 consisted primarily of white members, and ILA Local 858 consisted primarily of black members. JA 60. Judge Alexander Harvey II found that the defendant Locals violated Section 703(c)(2) of Title VII, which prohibits unions from segregating or classifying their membership along racial lines. *Id.* The district court permanently enjoined the separate maintenance of the Locals, and ordered the Locals to merge. (the "Consent Decree") JA 60-62. The parties formulated a seniority system, and the Locals were ordered, "to seek its implementation by means of collective bargaining with the Steamship Trade Association," the bargaining representative for its employer-members at the Port. JA 63.[1]

The purpose of the 1971 Consent Decree was to break up the segregated union Locals and their segregated hiring halls. The parties long ago accomplished all of those purposes. Local 333 is the survivor of the merger of Locals 829 and 858. The seniority system first agreed to by the parties in 1971 remains largely unchanged in the current collective bargaining agreement. United States Magistrate

---

[1] The district court Consent Decree bound the International Longshoremen's Association, its Atlantic Coast District and two of its racially segregated locals. The *STA* was not a party to the Consent Decree. This case was directed against the unions and not against management or the STA.

Judge Garvey recently found that the seniority system agreed to between Local 333 and the STA is the current expression of the Consent Decree. *Sewell v. Int'l Longshoremen's Ass'n*, 2013 U.S. Dist. LEXIS 43615, 195 L.R.R.M. (BNA) 2688 (D. Md. Mar. 27, 2013).

Plaintiffs do not allege that the parties to the Consent Decree failed to carry out the remedies provided therein. Instead, Count III of the Amended Complaint is an amalgamate of conclusory allegations of discrimination encompassing certain aspects of hiring "gang" labor, skill training, discipline, and promotion at the Port, as well as implementation of the Port's drug and alcohol abuse policy and security plan. Plaintiffs do not seek to enforce the Consent Decree. There are no allegations of any violation by the STA of any of the dictates of the Consent Decree. Instead, the Amended Complaint asked the lower court to re-write the Consent Decree and craft a slew new remedies, pursuant to the Consent Decree's clause allowing the court to "issue any additional orders as becomes necessary to insure equal employment opportunities..." JA 68. As the lower court properly determined, even if construed as intended beneficiaries of the Consent Decree, Plaintiffs as non-parties do not possess standing to modify the Consent Decree for their own purposes.

For the reasons discussed below, this Court should affirm the decision of the lower court to dismiss Count III, as the plaintiffs lack standing as a matter of law to modify the Consent Decree.

## II. SUMMARY OF ARGUMENT

The plaintiffs are not parties to the Consent Decree and, even if viewed as intended third-party beneficiaries, that status is not sufficient to provide standing for them to re-write the judicially-approved contractual agreement of the parties embodied in the Consent Decree to include matters never raised or considered by Judge Harvey when he approved the Consent Decree.

## III. ARGUMENT

Only in a very narrow set of circumstances can intended third-party beneficiaries enforce a consent decree, let alone modify the decree. The general rule is against finding third-party enforcement rights: "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975).

The Fourth Circuit has recognized that the "appropriate test under federal common law for third-party beneficiary status 'is whether the contract reflects the express or implied intention of the parties to benefit the third party.'" *Sec'y of State*

*for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 (4th Cir. 2007) (quoting *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994)). "As third-party beneficiary status is exceptional in the law, 'the privilege should not be granted liberally.'" *Id*. (*quoting Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005)).

Even if plaintiffs were intended beneficiaries, the applicable rule is that contract principles are generally applicable in an analysis of consent decrees, provided contract analysis does not undermine the judicial character of the decree. As the lower court correctly determined, consent decrees are construed as contracts for purposes of enforcement. *Hook v. Arizona Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992). The district court's authority is thus constrained by the language of the decree. *Thompson v. United States HUD*, 404 F.3d 821, 832 (4th Cir. 2005); *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) (noting "consent decrees are to be interpreted as contracts."); 46 Am. Jur. 2d Judgments § 195 (2d ed. elec. 2011) ("Judgments by consent are construed and interpreted as contracts to which the rules governing contract interpretation or construction apply.") (footnote omitted).

In *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984), the Supreme Court stated, "It is to be recalled that the scope of a consent decree must be discerned within its four corners, and not by reference to what might

5

satisfy the purposes of one of the parties to it or by what "might have been written had the plaintiff established his factual claims and legal theories in litigation.'" (*quoting United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)); *Anderson v. Stephens*, 875 F.2d 76, 80 (4th Cir. 1989) (same); *Willie M. v. Hunt*, 657 F.2d 55, 60 (4th Cir. 1981) ("From all this we take two cardinal principles for interpreting the consent judgment here in issue. First, that its meaning is properly to be sought within the confines of the judicially approved documents expressing the parties' consent. Second, that its meaning is to be sought in what is there expressed and not in the way it might have been written had the plaintiffs established their full rights in litigation or if it had been written to satisfy the purposes of only one of the parties to it.").

The purpose of the Consent Decree was to restrain and "enjoin discrimination against persons on the account of race in employment opportunities by the maintenance of separate hiring halls in the Port of Baltimore…" JA 60. Judge Harvey concluded that the maintenance of locals whose membership was segregated by race was "a *per se* violation of Section 703(c)(2) of the Act." *United States v. International Longshoremen's Asso.*, 319 F. Supp. 737, 741 (D. Md. 1970). The Decree went on to provide the agreed-upon remedies, merger of the segregated Locals and the implementation of a race neutral seniority system. JA 61-66. Judge Harvey's 1971 Consent Decree ordered defendants to provide regular

records to the Court and the plaintiff United States for a period of up to five (5) years. JA 63-66. The Consent Decree states,

> "Defendants will make all records, applications and other documents relevant to the provisions of this Decree available to counsel for *plaintiff or their designee*, at the site where such items are kept, for inspection, examination and/or copying; or if so requested shall make copies thereof available to counsel for plaintiff or their designee; but not so frequently as to impose an unreasonable burden or expense on defendants. Counsel for plaintiff or their designee shall also have the right to inspect the facilities of defendants during regular business hours." *Id.*, Section IV ¶11.

The Court envisioned the Government as the party with rights to enforce the Consent Decree, and not private litigants like the plaintiffs in this case.

Indeed, Judge Harvey explicitly stated that these reporting requirements are for the Government's enforcement purposes and that any information requested should be produced if "relevant to the requirements of this Decree" *to the Government*.

> In addition to the regular reports prescribed above, defendants shall provide any other information relevant to the requirements of this Decree to counsel for plaintiff upon written request; but such request shall not be made so frequently or in such detail as to impose an unreasonable burden or expense on defendants.

> Each record-keeping and reporting obligation imposed upon defendants by this section of the Decree, shall remain effective for a period of five (5) years from the date such obligation takes effect and shall automatically end after such five (5) year period unless the United States can affirmatively demonstrate to this Court a continuing need for such records and reports.

7

*Id.*, Section IV. The information reporting ended after five years, absent the Government's affirmative demonstration of need for continued reporting. The time period concerning implementation of the remedies and reporting to Court pursuant to the Consent Decree ended decades ago. Clearly, the intent was for the *Government*, and not individual members of Local 333, to enforce the Consent Decree.

It also is reasonable to conclude that the "remedies" provided by the Consent Decree would not exceed the bounds of the remedies that are appropriate under Title VII, absent some express provision to that effect. Title VII protects *bona fide* seniority systems. Section 703(h) of the 1964 Civil Rights Act (42 U.S.C. § 2000e-2(h)) provides in part:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, . . . provided that such differences are not the result of an intention to discriminate because of race, . . ..

*See EEOC v. Chesapeake & O. R. Co.*, 577 F.2d 229, 232 (4th Cir. Va. 1978). It is inappropriate to deny non-party members of Local 333 the benefits of a seniority system put in place as a consequence of the Consent Decree in order to provide a remedy in a "pattern-or-practice" suit envisioned by plaintiffs' desired re-writing of Judge Harvey's Consent Decree.

Indeed, the Consent Decree ordered implementation of a race neutral seniority system policed by a "Seniority Board" consisting of representatives of management and the new merged Local. JA 137. The seniority system implemented by way of the Consent Decree did not permit individual members of Local 333 the right to enforce their seniority status by way of injunctive relief under the Consent Decree. The Consent Decree itself directed such complaints to a final arbitrator in the form of a "Seniority Board," whose decisions "were final and binding on all concerned." JA 137. Under the seniority system approved by the Court, if the Seniority Board cannot reach agreement, the Consent Decree provided that matter "shall be resolved under the grievance procedure…" established in the collective bargaining agreement. JA 138 ¶C.

The four corners of the Consent Decree do not envision the remedies demanded by plaintiffs. Plaintiffs conclusorily allege race-based discrimination in testing of drivers. They generally declare African Americans are disproportionately disciplined. They allege the recent requirement that new employees pass Powered Industrial Truck ("PIT") training disparately impacts the African American members of Local 333. They alleged African Americans are unfairly penalized under the collectively bargained drug and alcohol policy. They go so far as to allege that the STA conspires with the Maryland Port Administration to circumvent the Port's security plan to benefit the Caucasian members of Local 333.

Judge Harvey's Decree does not mention any of these issues. None of these issues was part of the litigation that resulted in the Consent Decree. Clearly, the Consent did not envision a remedy to combat alleged race discrimination in every aspect of employment at the Port, especially where there is a comprehensive scheme of regulations governing such matters under Title VII and other anti-discrimination statutes. Plaintiffs seek to prosecute *new claims* never considered by Judge Harvey or consented to by the parties *as violations* of the Consent Decree.

Generally, a federal district court may not use its power of enforcing consent decrees to enlarge or diminish the obligations on which the parties have agreed and which the court has approved. *See United States v. Michigan*, 940 F.2d 143, 159 (6th Cir. 1991); *United States v. Western Elec. Co.*, 894 F.2d 430, 435 (D.C. Cir. 1990); *Brewster v. Dukakis*, 687 F.2d 495, 497 (1st Cir. 1982).[2]

In this case, none of the remedies sought by plaintiffs is within the four corners of the Consent Degree. They do not seek to merely enforce the Consent Decree, but to exponentially expand it. The lower court correctly concluded that there is no legal authority that permits these non-party plaintiffs standing to modify

---

[2] While a district court may modify a consent decree to impose new duties upon a party, plaintiffs never submitted a Fed. R. Civ. P. 60(b) motion seeking relief from the 1971 Consent Decree and state in their Brief that they only seek to *enforce* and not modify the Consent Decree. (Appellant's Brief at 20). Additionally, "a critical question in [a] Rule 60(b)(5) inquiry is whether the objective of the [previous] order . . . has been achieved," *Horne v. Flores*, 557 U.S. 433, 450 (2009). The goals of the Consent Decree long-ago were achieved.

a judicially approved *contract* and enforce yet to be determined remedies concerning matters never mentioned in the Consent Decree, not agreed to by the parties, nor ordered by the Court. Even viewed as intended third-party beneficiaries, that status is not sufficient to provide standing for plaintiffs to modify the contractual agreement of the parties embodied in the Consent Decree. Accordingly, this Court should affirm the decision of the lower court in its dismissal of Count III and the STA from this action.

The STA further incorporated by reference the arguments advanced by the other Appellees in this case, as though fully set forth herein.

## IV. CONCLUSION

For the foregoing reasons, the Court should affirm the decision of the District Court dismissing Count III the Amended Complaint in its entirety.

Respectfully submitted,

*/s/ Michael J. Collins, Esq.*
THE LAW OFFICES OF
MICHAEL J. COLLINS PC
7104 Biter Lane
Highland, Maryland 20777
(410) 967-7614 (voice)
(410) 773-9900 (facsimile)
michael@mjcollinslaw.com

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P.28.1(e)(2) or 32(a)(7)(B) because:

> [ X ] this brief contains 2,523 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or
>
> [ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14pt Times New Roman;
>
> or
>
> [ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: March 3, 2016                              */s/ Michael J. Collins*
                                                  *Counsel for Appellee*

# CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on this 3rd day of March, 2016, I caused this Brief of Appellee Steamship Trade Association of Baltimore, Inc. to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Kevin J. Marrinan & John P. Sheridan
MARRINAN & MAZZOLA MARDON, PC
26 Broadway, 17th Floor
New York, New York 10004
(212) 425-3240

*Counsel for Appellees John D. Baker, Harold J. Daggett,
Benny Holland, Jr, Inc., Int'l Longshoremen Assoc., AFL-CIO,
Gerald Owens & Stephen Knott*

Bruce M. Luchansky
LUCHANSKY LAW
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204
(410) 522-1020

*Counsel for Appellants*

I FURTHER CERTIFY that I caused the required copy of the Brief of Appellee Steamship Trade Association of Baltimore, Inc. to filed with the Clerk of the Court.

/s/ Michael J. Collins
*Counsel for Appellee Steamship
Trade Association of Baltimore, Inc.*